UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES F. PARATO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:18-CV-01062-NCC |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Charles F. Parato ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in support of the Answer (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for SSI and DIB on April 27, 2015 (Tr. 267-81). Plaintiff was initially denied on September 4, 2015 and on reconsideration on October 30, 2015 (Tr. Tr. 162, 181, 184-87). On November 24, 2015, Plaintiff filed a Request for Hearing before an

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") (Tr. 199). After a hearing, by decision dated November 22, 2017, the ALJ found Plaintiff not disabled (Tr. 37-58). On June 5, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015, and that Plaintiff has not engaged in substantial gainful activity since April 27, 2015, the alleged onset date (Tr. 42-43). The ALJ found Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, spina bifida occulta, an anxiety disorder, and a learning disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 43). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[2] with the following limitations (Tr. 45). He can never climb ladders, ropes, or scaffolds (*Id.*). He can occasionally climb ramps and stairs (*Id.*). He can occasionally stoop, kneel, crouch, and crawl (*Id.*). He must avoid jobs that require exposure to whole body vibration (*Id.*). He must avoid working at unprotected heights or around dangerous machinery (*Id.*). He must avoid concentrated exposure to extreme heat (*Id.*). Plaintiff is also limited to performing simple and/or repetitive work tasks with no close interactions with co-workers or the public (*Id.*). The ALJ found Plaintiff not capable of performing any past relevant work but that other jobs exist in

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 416.967(a), 404.1567(a).

significant numbers in the national economy that Plaintiff can perform including Document Preparer and Addresser (Tr. 51-53). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 53). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's RFC because the ALJ did not consider whether Plaintiff could interact appropriately with supervisors pursuant to Social Security Ruling (SSR) 96-9p (Doc. 19). 1996 WL 374185 (July 2, 1996). Plaintiff further asserts that because he has an extreme limitation in the ability to interact with others, that he meets the criteria for a mental disorder listing (*Id.*). For the following reasons, the Court finds the ALJ committed reversable error in his failure to consider whether Plaintiff could interact appropriately with supervisors.

Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own

5

description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

Social Security Ruling 96-9p addresses the Administration's policy regarding the impact of an RFC assessment for less than a full range of sedentary work, as is the case here. 1996 WL 374185, at *1. The Ruling identifies the relevant non-exertional mental limitations or restrictions that may apply when an ALJ determines that a claimant can perform at less than a full range of sedentary work. *Id.* at *3. These potential limitations include the following relevant provision: "Responding appropriately to supervision, co-workers and usual work situations." *Id.* SSR 96-9p does not mandate a finding of disability but rather:

> [T]he mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability. There may be a number of occupations from the approximately 200 occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded.

The ALJ limited Plaintiff to performing simple and/or repetitive work tasks with no close interactions with co-workers or the public but did not find any limitation regarding interacting with supervisors (*See* Tr. 45). In formulating Plaintiff's RFC determination, the ALJ repeatedly mentioned Plaintiff's issues with social interaction especially with those in a position of authority but failed to explain why he found no limitation regarding interacting with supervisors.

6

*See Emery v. Berryhill*, No. 17-CV-1988 (TNL), 2018 WL 4407441, at *3 (D. Minn. Sept. 17, 2018) (finding reversable error when the ALJ noted that plaintiff made use of a cane but made no specific finding as to whether the cane used by plaintiff was medically required and whether its use was supported by the medical record).

First, as the ALJ noted, Plaintiff reported that he avoided people and did not get alone with employers (7e at 6,7). Specifically, in his hearing testimony, as indicated by the ALJ, Plaintiff testified that he was fired from one pervious job due to an argument with one of his bosses (Tr. 101-02). Also, as noted by Plaintiff and highlighted by the ALJ, Plaintiff expressed significant frustration on his May 28, 2015 adult function report (Tr. 346-53). For example, in response to the question, "If you don't do house or yard work, explain why not," Plaintiff responded, "I'M F[*&#]ING HOMELESS – N/A - this is pissing me off" (Tr. 349). Contrary to Defendant's argument, while these frustrations were largely connected with the form's failure to consider the needs of a homeless applicant, when taken in context, as noted by the ALJ, his communication on this form is further evidence of Plaintiff's limitations in interacting with others (Tr. 46).

Second, the medical records also support a finding the Plaintiff has issues interacting with others. Plaintiff has been diagnosed with anxiety and a mood disorder with possible schizophrenic spectrum disorder (Tr. 487). Physicians assigned him Global Assessment of Functioning ("GAF")[3] scores as low as 49 (Tr. 487, 555, 565). The ALJ afforded these scores

---

[3] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70

7

"little weight," apparently finding GAF scores generally not reliable for a number of reasons (Tr. 51). However, despite the limited medical record, Plaintiff was noted as being irritable, agitated or belligerent on many occasions with medical professionals (Tr. 49, 496, 507, 532, 555). For example, on one occasion as the physician was concluding the visit, Plaintiff asked, "aren't you going to do anything about the other issues?" in reference to his stress and anxiety. When the physician again offered behavioral health treatment and indicated that the visit was over, Plaintiff said, "I don't need a psychologist" and "I'm going to file a malpractice suit" (Tr. 496). In fact, Plaintiff reported that physicians at one of his providers eventually refused to treat him because he did not get along with them and got upset with them (Tr. 47, 97).

Third, the ALJ noted on several occasions the findings of psychologist Dr. Deanna Coschingnano, Ph.D., a consultative examiner, that "interacting appropriately with supervisors and co-workers in a work setting 'could' be difficult for the [Plaintiff]" (Tr. 44, 50, 562-66). The ALJ afforded the opinion of Dr. Coschignano "significant evidentiary weight" finding "[h]er opinions regarding the [Plaintiff's] abilities, including his problems with social interaction, were based in part on her review of his treatment records and are consistent with the medical evidence as a whole" (Tr. 50).

Fourth, the ALJ afforded the opinions of two State Agency non-examining psychologists "partial weight" but failed to properly account for the social limitations addressed in these reports (*Id.*). The ALJ found the opinions to be "reasonably consistent with the medical evidence as a whole, which reflects that [Plaintiff] has significant social difficulties with his medical providers and others" (*Id.*). State Agency non-examining psychologists, upon review of the evidence in July and October of 2015, found that Plaintiff retained the ability to perform

---

represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

simple and most detailed tasks with "minimal" social contact (Tr. 50, 113-81). One State Agency non-examining psychologist, addressing Plaintiff's social interaction limitations, found Plaintiff to be moderately limited as to his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors but not to be significantly limited as to his ability to ask simple questions or request assistance and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 124). The other State Agency non-examining psychologist found that Plaintiff, "[a]ppears to be irritable and angry and would do best in a job with very limited social/interactional requirements" (Tr. 157). The ALJ determined that Plaintiff could not perform most detailed tasks, contrary to the opinions, and instead limited Plaintiff to simple and/or repetitive tasks only (Tr. 50). Therefore, the ALJ's apparent finding of "no limitation" as to Plaintiff's interaction with supervisors appears inconsistent in light of his repeated indication of limitations in the area and the significant evidence in the record of such a limitation.

Furthermore, the Vocational Expert ("VE") identified two jobs with significant numbers in the national economy that Plaintiff could perform and these jobs require a specific level of interaction with supervisors. Specifically, the VE found that Plaintiff could do the jobs of Document Preparer (Dictionary of Occupational Titled ("DOT")[4] No. 249.587-018) and Addresser (DOT No. 209.587-010). Both jobs, according to the DOT, involve "People: 8- Taking Instructions – Helping" at a "Not significant level." *See* 249.587-018 Document Preparer, Microfilming, DICOT 249.587-018; 209.587-010 Addresser, DICOT 209.587-010. "Taking Instructions – Helping" is a category of social interaction associated with a specific job and is defined as:

---

[4] U.S. Department of Labor (4th ed. rev.1991). The Social Security Administration takes administrative notice of the DOT. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

9

> Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning" helpers.

DOT, Appendix B - Explanation of Data, People, and Things, 1991 WL 688701. A rating of "Not significant" is consistent with limitations to occasional, brief and superficial contact with co-workers, supervisors, and the public. *Alie v. Berryhill,* , No. 4:16 CV 1353 JMB, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017). The Court is not able to determine if Plaintiff would be able to perform these jobs because the ALJ did not clearly address Plaintiff's social limitations as to supervisors. *See cf. Flaherty v. Halter*, 182 F. Supp. 2d 824, 851 (D. Minn. 2001) (finding jobs with "not significant" levels of social interaction not to contradict the level of interaction specified by the ALJ of only a "brief superficial type of contact with co-workers and supervisors and members of the public as a part of the job task"). If fact, the VE testified that competitive employment would be precluded if Plaintiff was limited to less than occasional interaction in all three categories including interaction with supervisors (Tr. 110).

Thus, because the ALJ repeatedly highlighted Plaintiff's limited ability to interact with supervisors but failed to address his finding of no limitation, a finding that significantly impacts the testimony of the VE, remand is appropriate so Plaintiff's ability to interact with supervisors may be fully considered. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.").

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand,

the ALJ is directed to consider the effect of Plaintiff's mental impairments on his ability to interact with supervisors; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 11th day of September, 2019.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE